In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00188-CR
______________________________


TOMMY RAY YOUNG, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 18,582-2004


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Tommy Ray Young has filed a notice of appeal from an order dismissing the prosecution
against him. Generally, appellate courts may consider an appeal by a criminal defendant only after
conviction. See Workman v. State, 170 Tex. Crim. 621, 622, 343 S.W.2d 446, 447 (1961). There
are narrow exceptions to the rule requiring conviction before a criminal defendant may appeal. 
Wright v. State, 969 S.W.2d 588, 589 (Tex. App.âDallas 1998, no pet.); McKown v. State, 915
S.W.2d 160, 161 (Tex. App.âFort Worth 1996, no pet.). 
Â Â Â Â Â Â Â Â Â Â Â Â Because Young has not been convicted and his case does not fall into any of the exceptions
allowing a criminal defendant to appeal without having been convicted, we conclude we do not have
jurisdiction over this appeal. See Wright, 969 S.W.2d at 589â90 (defendant may not appeal pretrial
order revoking bond); Shumake v. State, 953 S.W.2d 842, 846â47 (Tex. App.âAustin 1997, no pet.)
(defendant may not appeal pretrial order raising bond); McKown, 915 S.W.2d at 161 (defendant may
not appeal trial court's denial of motion to suppress); Petty v. State, 800 S.W.2d 582, 583 (Tex.
App.âTyler 1990, no pet.) (defendant may not appeal trial court's order of dismissalânot aggrieved
by order).
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the appeal for want of jurisdiction.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â January 4, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â January 5, 2006

Do Not Publish




SPAN>

 Under a hypothetically correct charge in this case, the jury was required to find, beyond a
reasonable doubt, that: (1) Stine; (2) intentionally or knowingly; (3) entered Hartwell's habitation;
(4) without her effective consent; and (5) attempted to, or did in fact, appropriate Hartwell's property;
(6) without her effective consent; (7) with intent to deprive her of the property. Tex. Penal Code
Ann. § 30.02(a)(1) (Vernon 2003), Â§ 31.03(a) (Vernon Supp. 2009).

 B. The Evidence Was Legally Sufficient to Support the Verdict 

 The requirement of legal sufficiency confirms that a fact question was raised by the evidence. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was
insufficient to raise an issue of Stine's guilt, there was no issue for the jury's resolution. Id. When
conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to
the verdict and determine whether any rational jury could find the essential elements of burglary of
a habitation as charged by the indictment beyond a reasonable doubt. Hooper v. State, 214 S.W.3dÂ 9,
13 (Tex. Crim. App. 2007); Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing
Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Clewis, 922 S.W.2d at 132-33; Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). 

 The issue here is not whether a burglary occurred or whether property was removed from the
victim's home without consent. Instead, Stine argues that the "State failed to establish that it was
Appellant who entered the mobile home, and that it was the Appellant who stole the property from
inside." Reviewing the evidence in a light most favorable to a finding of guilt reveals that B.H.
testified Stine drove to the trailer, walked to the back door, broke it, and entered Hartwell's home. 
B.H. then claimed Stine committed theft by appropriating Hartwell's property and bringing that
property back to the truck. A person acts with intent "with respect to the nature of his conduct . . .
when it is his conscious objective or desire to engage in the conduct . . . ." Tex. Penal Code Ann.
Â§ 6.03(a) (Vernon 2003). In a burglary prosecution, the specific intent to commit theft may be
inferred from the circumstances. McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989);
Simmons v. State, 590 S.W.2d 137, 138 (Tex. Crim. App. [Panel Op.] 1979). Stine was seen by
Garcia using Hartwell's stolen debit card. The evidence further shows that Hartwell's house was
locked, that a glass window was shattered, that Hartwell's property was taken, and that some of the
property was returned to her by investigators. Based on all of the evidence, we find a rational jury
could find that Stine intentionally or knowingly entered Hartwell's habitation and without Hartwell's
consent appropriated the property with intent to deprive Hartwell of the property. The evidence was
legally sufficient to support the jury's verdict. 

 C. The Evidence Was Factually Sufficient to Support the Verdict 

 Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing
factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997); Harris v. State, 133 S.W.3d 760, 764 (Tex. App.--Texarkana 2004, pet. ref'd). A
clearly wrong and unjust verdict is manifestly unjust, shocks the conscience, or clearly demonstrates
bias. Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). Because factual sufficiency
is an issue of fact, we are not free to reweigh the evidence and set aside the verdict merely because
we feel a different result is more reasonable. Clewis, 922 S.W.2d at 135. 

 The majority of contrary proof came from the testimony of Stine's son Joshua. He testified
the trio was traveling through the country to get to his uncle's house when the F-150 began having
car trouble. B.H. got out of the truck with her purse and proclaimed she had to use the restroom. 
B.H. and Joshua went to the nearest trailer and knocked on the door. When no one answered, B.H.
went to the back door, saw it was open, and entered. Joshua sat in the truck and waited. After ten
minutes, B.H. returned with the purse she had originally taken in. She was not carrying other items. 
Joshua next testified the group made a few stops at different stores and claimed B.H. was making
purchases with her mother's credit card. He stated he was taking Xanax supplied by B.H. so that they
could both get high together that day. The defense also elicited the fact that B.H. believed she would
not be charged if she testified against Stine. 

 Since we have determined the evidence raised issues for the jury's resolution, we will not sit
as the thirteenth juror re-evaluating the weight and credibility of the evidence. Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts
in the testimony, and draw reasonable inferences from basic facts. Johnson, 23 S.W.3d at 7; Clewis,
922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d 349, 354 (Tex. App.--Fort Worth 2002, pet.
ref'd) (citing Jackson, 443 U.S. at 319). 

 In reviewing all of the evidence in a neutral light, we cannot say the evidence of Stine's guilt
was greatly outweighed by Joshua's testimony exonerating his mother. We find nothing unjust or
shocking about the verdict, and conclude the evidence was factually sufficient to support it. As the
fact-finder, the jury was free to disregard Joshua's testimony, and we must not reweigh the credibility
of conflicting statements.

III. The Trial Court Did Not Err in Allowing Evidence of Allegedly Extraneous Offenses

 An extraneous offense is defined as any "act of misconduct . . . that is not shown in the
charging papers." Coffel v. State, 242 S.W.3d 907, 909 (Tex. App.--Texarkana 2007, no pet.)
(citing Rankin v. State, 953 S.W.2d 740 (Tex. Crim. App. 1996)). The statement must have reflected
a crime or bad act to which Stine was connected. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim.
App. 1993). Except in instances not applicable here, during the guilt/innocence phase, Texas Rule
of Evidence 404(a) prohibits the use of character evidence "on the ground that it is generally laden
with dangerous baggage of prejudice, distraction, time consumption and surprise." Sims v. State, 273
S.W.3d 291, 294 (Tex. Crim. App. 2008); see Tex. R. Evid. 404(a). Character evidence such as
extraneous offense evidence "tends to confuse the issues," "weigh[s] too much with the jury and .Â .Â .
overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity
to defend" a particular charge. Id. 

 B.H.'s statement that she went with Stine to "Ace Hardware, and Terri Stine stole, like -- I
don't know if it was bags of --" was interrupted by counsel's extraneous offense objection. The
objection was sustained and the jury was instructed to disregard B.H.'s statement. However,
counsel's motion for mistrial was denied. We interpret Stine's argument, on this matter, to complain
of the trial court's action in overruling the motion for mistrial. 

 Extraneous offenses "can be rendered harmless by an instruction to disregard . . . unless it
appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning
character as to suggest it would be impossible to remove the harmful impression from the jury's
mind." Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); see Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999). In a majority of cases, the evidence complained of has little
relevance to any material issue in the case, such that a prompt instruction to disregard will ordinarily
cure any prejudicial effect. State v. Boyd, 202 S.W.3d 393, 402 (Tex. App.--Dallas 2007, pet. ref'd). 
However, an instruction to disregard will not cure the error of improperly inserted evidence of an
extraneous offense when that evidence establishes exactly what the State is trying to prove. Id. at
402-03 (citing Music v. State, 135 Tex. Crim. 522, 121 S.W.2d 606, 609-10 (1938)). 

 While we employ a case-by-case analysis when deciding whether an instruction is curative,
there are several nonexhaustive, nonexclusive factors this Court has adopted from its review of
numerous Texas Court of Criminal Appeals cases. Hardin v. State, 20 S.W.3d 84, 93 (Tex.
App.--Texarkana 2000, pet. ref'd). Included among the factors we consider in this case are: (1) the
weight of other evidence supporting the decision; (2) nature and form of the question; (3) whether
other evidence concerning the same subject has been admitted; (4) the particular instruction given,
and (5) the harm to the accused as measured by the severity of the sentence. Id. at 93-94; see Sands
v. State, 64 S.W.3d 488, 493 (Tex. App.--Texarkana 2001, no pet.). 

 Here, we have already concluded that other evidence at trial was sufficient to support a
finding of Stine's guilt. The State's question asking what happened after B.H., Joshua, and Stine left
the trailer was not intended to elicit extraneous offense testimony. The State informed the trial court
he was not even aware of this event. Although there was no other evidence presented to demonstrate
Stine stole an item from Ace Hardware, her thirty-five-year sentence, considering a five-year to life
imprisonment range, was less than the mid-range. (2) The trial court promptly sustained the objection
and instructed the jury to disregard the statement of the witness. We conclude the court's instruction
to disregard was curative. The trial court did not err in overruling the motion for a mistrial. 

 Next, B.H. testified Stine gave her some medicine for her headache which made her tired. 
Counsel lodged an extraneous offense objection. The court overruled the objection and motion for
mistrial. B.H. stated she did not know what medication was given to her. 

 We review a trial court's admission of evidence for abuse of discretion. McCarty v. State,
257 S.W.3d 238, 239 (Tex. Crim. App. 2008); Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim.
App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable
disagreement. McCarty , 257 S.W.3d at 239 (citing Zuliani, 97 S.W.3d at 595). Unless there is clear
abuse of the trial court's discretion, its ruling will not be reversed. Id. 

 B.H. initially did not know what medicine was given to her, but when re-called, was able to
remember it was Advil or Tylenol. Because B.H. did not testify about an act of misconduct or a
crime to which Stine was connected, her statement did not demonstrate that an extraneous offense
occurred. See Coffel, 242 S.W.3d at 909. Thus, the trial court did not abuse its discretion in
overruling counsel's objection. 

IV. The Trial Court Did Not Err in Finding No Evidence of Incompetency 


 Stine also objects that the trial court did not follow the proper procedure in determining
whether she was competent to stand trial. A defendant is presumed competent to stand trial unless
proved incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art.
46B.003(b) (Vernon 2006); Gray v. State, 257 S.W.3d 825, 827 (Tex. App.--Texarkana 2008, pet.
ref'd). Stine was only incompetent to stand trial if she did not have sufficient present ability to
consult with her lawyer to a reasonable degree of rational understanding or a rational and factual
understanding of the proceedings against her. Tex. Code Crim. Proc. Ann. art. 46B.003(a)
(Vernon 2006); Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). 

 "On suggestion that the defendant may be incompetent to stand trial, the court shall determine
by informal inquiry whether there is some evidence from any source that would support a finding
that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004
(Vernon Supp. 2009). Evidence must indicate "recent severe mental illness, at least moderate
retardation, or truly bizarre acts by the defendant" to raise a bona fide doubt in the mind of the trial
judge in order to prompt a court's informal inquiry concerning competency. Gray v. State, 257
S.W.3d at 829. "If after an informal inquiry the court determines that evidence exists to support a
finding of incompetency, the court shall order an examination . . . to determine whether the
defendant is incompetent to stand trial in a criminal case." Tex. Code Crim. Proc. Ann. art.
46B.005 (Vernon 2006). We review the totality of the facts surrounding the trial court's decision on
the issue of competency for abuse of discretion. Gray v. State, 257 S.W.3d at 827 (citing Moore v.
State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)). 

 By noon of the first day of trial, February 10, 2009, the trial court was concerned about Stine
"being high." A drug test was ordered, and Stine tested positive for amphetamines and
methamphetamine. The trial court then declared her bond insufficient and placed her in custody. 

 The first mention of competency from Stine's counsel occurred on Thursday, February 12,
2009, after Stine was found guilty by the jury. Her attorney requested a competency inquiry because
Stine failed to maintain eye contact with him, was extremely jittery, and said she did not understand
him. When Stine's counsel tried to discuss her right to testify during the punishment phase of the
trial, Stine's counsel stated Stine "could not think straight and [was] unable to make any decisions." 
Stine told the court she had physical problems, "schizoaffective and borderline personality" disorder
and could not "hold . . . a complete thought process," because she had not taken her prescription
drugs including Adderall, Seroquel, BuSpar, Lamictal, Avaflex, Mirapex, hydrochlorothiazide,
Lisinopril, Klonopin, and hydrocodone. 

 Stine told the court on that day that she understood the jury found her guilty, that the trial was
in the punishment phase, and that she understood the range of punishment. Stine also said she would
be in a better position if she received her medication. A transportation officer was questioned about
Stine's behavior, which he claimed was consistent throughout the week of the trial. A community
supervision officer who monitored Stine's community supervision for a prior offense testified Stine
reacted similarly when she discovered the State was filing a motion to revoke her community
supervision for the previous offense. Once again, the trial court ordered her to take a drug test on
that Thursday. The results of the Thursday drug test likewise were positive for amphetamines and
methamphetamine. The next day, her counsel reported that Stine was "extremely sleepy and more
concerned with resting than really conversing with me." By that time, Stine stated that she had some
of her prescribed medication, brought to her by a family member. She requested that the punishment
trial not begin until that afternoon. 

 Instead, the trial court continued the trial until the next week and ordered a psychiatrist,
Dr.Â Charles Keenan, to make a "mental-health assessment and initial evaluation and screening to
ascertain whether he thinks there's any other issues, other than medication." The trial court was clear
that this was "not a full-blown competency" determination. Keenan met with Stine over the weekend
once for forty-five to fifty minutes and another time for fifteen minutes before discussing his findings
with the trial court. He relayed to the court that Stine had not slept for a week, was exhausted, and
did not have her medication when she was first examined on Friday. Stine was allowed to rest and
receive her medication over the weekend. Although Keenan did not do a complete competency
examination, he testified Stine knew where she was on that Monday, knew why she was in court,
who the attorneys were, and seemed to understand the proceedings as she had some questions about
the difference in the two phases of trial. Keenan concluded Stine would have no difficulty
discussing matters with her attorney and that she was "competent to continue." After the
transportation officer's statement that Stine was in much better shape, the trial court concluded there
was no evidence to support Stine's incompetence. Specifically, in the court's opinion, the issue was
one of Stine's failure to take medication and get rest, not whether she was competent to stand trial. 

 Here, the trial court, on suggestion by the defendant, properly considered the issue of
incompetency. Stine appeared to be "fidgety" during the trial, prompting the trial court to require
drug testing, which returned positive results. Later, it was shown that Stine had been prescribed
some prescription medication, some of which she had not taken as prescribed. The trial court
attempted to determine whether Stine was "high" or if some other problem existed. After the
competency issue was raised by defense counsel and despite being in the middle of a jury trial, the
trial court recessed the trial, appointed a psychiatrist to do an evaluation of Stine so that the trial
court could determine by informal inquiry whether there was evidence to support a finding that Stine
might be incompetent. No such evidence was presented. We believe the actions of the trial court
in this instance fully complied with the statutory requirements. 

 Given the evidence presented to the trial court in its informal inquiry, we conclude the trial
court did not abuse its discretion in determining that there was no issue as to Stine's competency to
stand trial. 


V. Conclusion 

 

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: October 12, 2009

Date Decided: October 21, 2009


Publish

1. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
2. Stine's criminal record was admitted which included six additional (felony and
misdemeanor) convictions.